IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GREGORY P. ADAMS, <br><br> Plaintiff, <br><br> v. <br><br> BEST WESTERN INTERNATIONAL, INC., and LAWRENCE M. CUCULIC, <br><br> Defendants. | 8:24CV102 <br><br> MEMORANDUM AND ORDER |

Defendant Best Western International, Inc. ("Best Western") is a nationwide hospitality company headquartered in Phoenix, Arizona. Defendant Lawrence M. Cuculic ("Cuculic") is Best Western's President and Chief Executive Officer. He resides in Phoenix. Plaintiff Gregory P. Adams ("Adams"), who formerly lived in Phoenix but now resides in Nebraska, worked at Best Western from November 1, 2013, until his employment terminated on March 4, 2024. Cuculic was Adams's supervisor from December 1, 2021, until his time with the company ended.

Adams departure from Best Western was not exactly amicable. In this case, he seeks to recover damages from Best Western and Cuculic under state and federal law (Filing No. 11). Best Western has answered (Filing No. 15) Adams's pleading and submitted to the Court's personal jurisdiction. *See* Fed. R. Civ. P. 12(b). Cuculic has not.

Now before the Court is Cuculic's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) and Nebraska Civil Rules 7.1 and 12.1 (Filing No. 16). He requests the Court dismiss Adams's claims against him with prejudice and award him "his attorney's fees, costs, and expenses incurred in defending this action." Adams opposes Cuculic's motion (Filing No. 24), arguing jurisdiction in Nebraska is not only proper under Nebraska law and governing precedent but is also "in the interest of justice and judicial economy." For the reasons stated below, Cuculic's motion is denied.

I. BACKGROUND

A. Facts[1]

Adams has "extensive experience in the hospitality industry." He joined Best Western on November 1, 2013, as Vice President of E-commerce. At that time, he worked in person at the company's Global Operations Center in North Phoenix, Arizona. On December 1, 2017, he was promoted to Senior Vice President and Chief Digital Officer, his most significant position at Best Western. He continued to work in person full time in Phoenix until March 2020, when he began to work in a hybrid capacity. He purchased land in Nebraska in November 2020 to build a new home and permanently relocated there on October 1, 2022, updating his new address in Best Western's Human Resources ("HR") system. He worked remotely from then on "but frequently traveled to Phoenix and other locations for board meetings and work-related events."

Adams began reporting to Cuculic on December 1, 2021. According to Adams, Cuculic did not object to his relocation and permitted him to work remotely "as evidenced by the absence of any mention of his relocation in the manager's comments of his 2022 Performance Review, which Cuculic signed and delivered December 6, 2022." Adams scored well on that review.

In September 2023, Best Western hosted an annual convention (the "convention") in Honolulu, Hawaii. Leading up to the event, Adams, who has autism spectrum disorder ("ASD"), felt his role at the convention was diminished. Known for "the challenges and successes [he] has experienced as a neurodiverse executive for" Best Western, Adams alleges the convention was "marred by incidents that strongly indicated discriminatory

---

[1] The facts are primarily drawn from the Amended Complaint (Filing No. 11), the attached exhibits (Filing Nos. 11-1, 11-2, 11-3), and Adams's affidavit (Filing No. 25). *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (explaining that in circumstances like these, the Court must test a plaintiff's showing of personal jurisdiction "'not by the pleadings alone, but by the affidavits and exhibits' supporting or opposing the motion" (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004))). Though Cuculic denies many of Adams's allegations about him, he does not challenge them for purposes of his motion to dismiss.

practices and a hostile work environment." For example, Adams complains Cuculic "created a hostile work environment by incorporating [Adams's] straightforward manner of communication, characteristic of someone with ASD, in the panel dialogue with no regard to how the audience [of approximately 2,000 people] might perceive it or if it could negatively impact [his] professional image." Adams also alleges he and his wife overheard a Best Western board member make a racially derogatory remark about a former board member of Asian descent as they boarded a bus at the convention. Adams promptly notified Cuculic of that and other discriminatory actions at the convention and submitted two Confidential Incident Reports to Best Western on December 4, 2023.

After the convention, Cuculic prepared Adams's 2023 Performance Review (the "2023 review"). They met in person in Phoenix on November 7, 2023, to discuss the review. Adams reports that Cuculic advised him that his performance had declined sharply in 2023. Cuculic also asserted Adams had violated the terms of his November 1, 2013, Offer of Employment Letter, by failing to maintain his residence in Phoenix. He further claimed Adams was ineffective in leading his team because he was working remotely from Nebraska. Nonetheless, Cuculic stated he had "tacitly allowed [Adams] to lead his team from Omaha – while evaluating his engagement."

Adams sent Cuculic a nine-page response to his 2023 review. Maintaining his performance was as strong as ever, Adams contends the review included false and harmful assertions about his performance at Best Western. He alleges his review and Best Western's other discriminatory and retaliatory conduct have caused him extreme stress and anxiety.

On December 1, 2023, Cuculic sent Adams a meeting invitation for December 5, to follow up on Adams's 2023 review and response. Adams arrived in Phoenix on December 3, and met with Best Western's General Counsel and its Vice President of HR Rachel Austin ("Austin"). He informed them that he would need to be placed on leave under the Family and Medical Leave Act of 1993 ("FMLA"), *see* 29 U.S.C. § 2601 *et*

3

*seq.*, "to focus on his health and well-being." He was on leave from December 5, 2023, to February 26, 2024.

While on leave, Adams filed charges against Best Western with the federal Equal Employment Opportunity Commission and the Nebraska Equal Opportunity Commission. He asserted claims of discrimination and retaliation and later received notice of his right to sue.

On February 27, 2024, Adams, Cuculic, and Austin met in Phoenix on what Adams considered short notice. During the meeting, Cuculic told Adams he could work from Nebraska, but that Cuculic reserved the right to require him to relocate back to Phoenix. Adams objected, arguing that would violate Best Western policy and the FMLA. Before the meeting ended, Cuculic placed Adams on indefinite administrative leave.

On March 4, 2024, Cuculic sent Adams a meeting invite and a text. He also left him a voicemail. Before Adams had a chance to respond, Cuculic emailed Adams a termination letter to his personal email address. He questioned Adams's honesty and advised him he had lost confidence in Adams's ability to lead the technology department.

Adams alleges the letter contained several false statements. His lawyer demanded "a retraction in accordance with Neb. Rev. Stat. § 25-840.01." None came. Adams contends Cuculic's criticisms, poor review, and ultimate decision to terminate his employment constitute unlawful discrimination and retaliation. He further alleges Cuculic's unlawful and tortious acts have caused him "overwhelming stress and anxiety."

B.   **Procedural History**

On May 20, 2024, Adams filed an Amended Complaint with a wide variety of claims against Best Western and Cuculic. Against Best Western, he asserts claims for (1) disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2018, 42 U.S.C. § 12101 *et seq.*;

4

(2) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (3) retaliation under the FMLA, 29 U.S.C. § 2615(a)(2); (4) discrimination and retaliation under the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 *et seq.*; (5) negligent supervision; (6) negligent retention; and (7) respondeat superior. Adams asserts claims against Cuculic for (1) tortious interference with a business relationship, (2) "defamation per se: libel and slander," (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress.

Best Western answered on June 20, 2024. That same day, Cuculic, "specially appearing to contest the Court's personal jurisdiction," moved to dismiss the claims against him. That motion is now fully briefed and ready for decision. Neither party has requested an evidentiary hearing, and the Court sees no reason to question their judgment at this point. *See St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 623 (8th Cir. 2001) ("[T]he moving party must seek an evidentiary hearing if it wishes to challenge the factual underpinnings of the nonmoving party's prima facie case.").

## II.   DISCUSSION
### A.   Standard of Review

To defeat a pretrial "motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists." *K-V Pharm.*, 648 F.3d at 591; *see also Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) ("While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing."). That burden can be met by providing sufficient facts "to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008).

Absent an evidentiary hearing, the Court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "The evidentiary showing

5

required at the prima facie stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quoting *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)).

## B.   Personal Jurisdiction

This Court has personal jurisdiction over Cuculic "only to the extent permitted by" Nebraska's long-arm statute, *see* Neb. Rev. Stat. 25-536, and fundamental principles of due process under the Fourteenth Amendment to the United States Constitution. *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945))). Section 25-536 "extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits." *Abdouch v. Lopez*, 829 N.W.2d 662, 670 (Neb. 2013) ("It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute."). With that, the Court's task "is to determine whether the exercise of personal jurisdiction comports with due process." *Henry L. Firm v. Cuker Interactive, LLC*, 950 F.3d 528, 532 (8th Cir. 2020).

"Due process requires that there be sufficient 'minimum contacts' between the nonresident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). "Each defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984). "The minimum contacts required by due process need not include any physical presence in the State." *Dakota Indus.*, 28 F.3d at 915. A defendant's contacts are sufficient when his "conduct and connection with the forum State are such that he

should reasonably anticipate being haled into court there." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (quoting *Burger King*, 471 U.S. at 474 (alteration omitted)).

The Supreme Court recognizes two types of personal jurisdiction: general (or all-purpose) jurisdiction and specific (or case-linked) jurisdiction. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021); *Fastpath*, 760 F.3d at 820. General jurisdiction applies only when a defendant's contacts are "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).

In contrast, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor*, 592 U.S. at 359. For a court "to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. County*, 582 U.S. 255, 262 (2017) (internal marks omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Because Adams only mentions specific jurisdiction—and the record doesn't appear to support general jurisdiction—the Court focuses there. *See Daimler AG*, 571 U.S. at 133 (noting general jurisdiction's "less dominant place in the contemporary scheme").

To assess whether a defendant has sufficient contacts with the forum, the Court looks for "some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus is "on the 'relationship among the defendant, the forum, and the litigation.'" *Daimler AG*, 571 U.S. at 133 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or

7

of the unilateral activity of another party or a third person." *Stanton*, 340 F.3d at 693-94 (quoting *Burger King*, 471 U.S. at 475 (internal quotations omitted)).

The Eighth Circuit has identified a five-factor test to use in evaluating whether the totality of the circumstances establish minimum contacts. *See Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. & Exp. Corp.*, 89 F.4th 1023, 1032 (8th Cir. 2023). To that end, the Court must consider "(1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). "The first three factors are primary and carry more weight" than the last two. *Hawkeye Gold*, 89 F.4th at 1032.

In cases involving intentional torts, the Eighth Circuit has also applied the effects test from *Calder v. Jones*, 465 U.S. 783, 789 (1984). *See Dakota Indus.*, 946 F.2d at 1390-91 (noting *Calder* requires courts to consider additional factors, not to abandon the five-factor test). Under that test, the Court has "personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Id.* (quoting *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)). Personal jurisdiction is warranted because the non-resident defendant knows "that the brunt of" the injury from his intentional tort will "be suffered in the state where the plaintiff live[s]" and should reasonably expect to have to appear in court there. *Id.; see also Calder*, 465 U.S. at 790 (concluding a plaintiff injured in one state "need not go to [another state] to seek redress from persons who, though remaining in [the second state], knowingly cause the injury in" the state in which plaintiff lives and works).

Here, Adams contends Cuculic purposely availed himself of the privilege of conducting business with Nebraska by permitting Adams to relocate to Nebraska on

October 1, 2022, and remotely work from there without objection. In particular, Adams notes that Cuculic stated in Adams's 2023 review that he "tacitly allowed [Adams] to lead his team from Omaha." As Adams sees it, Cuculic's "continuous supervisory relationship and frequent virtual communications with [Adams] in Nebraska is sufficient to establish minimum contacts in order to confer jurisdiction."

In his affidavit, Adams offers some specifics. He avers that between the time he relocated to Nebraska and was terminated on March 4, 2024, Cuculic sent him 294 emails (thirty-nine directly), made twenty-one meeting invites, sent five text messages, and called him four times, leaving one voicemail. Cuculic's correspondence with Adams included the 2023 review and 2024 termination letter, both of which Adams contends contained false and harmful statements that caused Adams to suffer "extreme stress and anxiety" in Nebraska. Although Adams acknowledges that phone calls and emails alone do not establish personal jurisdiction, *see Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015), he argues that his long-term, remote employment relationship with Cuculic and the "continuous and ongoing nature" of his communications with Adams in Nebraska establish personal jurisdiction here.

In addition, Adams briefly contends Cuculic's intentional torts directed at Adams in Nebraska establish minimum contacts under the *Calder* effects test. *See Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 954 (8th Cir. 2022). According to Adams, Cuculic should have reasonably anticipated being haled into a Nebraska court because he aimed his tortious communications at Adams in Nebraska knowing he would suffer the brunt of his injury here.

Finally, Adams argues the interests of justice and judicial economy are best served by allowing his case to proceed in one trial in Nebraska, which he says has an overriding interest in—among other things—providing its residents a forum to pursue claims against out-of-state tortfeasors. *See Whaley*, 946 F.3d at 452 (listing the forum's interest and convenience as relevant—though secondary—factors). *But see Walden v. Fiore*, 571 U.S.

9

277, 284 (2014) ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."). The linchpin of Adams's efficiency argument is Best Western's decision to answer Adams's amended complaint and defend itself in Nebraska court. In Adams view, judicial economy and efficiency abound in Nebraska because "[i]t would not make sense to have multiple trials in multiple forums pertaining to the exact same issue" and Cuculic will have to participate in the litigation in this forum anyway as an officer of Best Western.

To be sure, Adams does not mention Arizona's interests or the ease of having one trial in Arizona, where most of the other witnesses ostensibly reside. Adams does concede Cuculic "may be inconvenienced to some degree by having to defend this case in Nebraska" but asserts any inconvenience is minor given the availability of videoconferencing technology and Cuculic's role as "the party who is at the heart of the misconduct that [Adams] is asserting."

In response, Cuculic states he is a resident of Arizona "with no ties to or contacts with Nebraska." He strenuously objects to Adams's unjustified "attempt to haul him into court across the country" based upon "his minimal, virtual contacts with [Adams] while [Adams] worked remotely in Nebraska." Relying on *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, and similar precedent, Cuculic contends "scattered e-mails, phone calls, and" other electronic communications with Adams "do not constitute a 'deliberate' and 'substantial connection' with [Nebraska] such that [Cuculic] could 'reasonably anticipate being haled into court there.'" 646 F.3d 589, 594 (8th Cir. 2011) (quoting *Burger King*, 471 U.S. at 474-75).

Cuculic faults Adams for relying on contacts that (1) are insubstantial and unrelated to this litigation, *see Walden*, 571 U.S. at 284, (2) arose from conduct in Hawaii and Arizona and relate to Adams alone as opposed to the forum itself, *see Bristol-Myers*, 582 U.S. at 262, and (3) were made in Cuculic's corporate capacity and should not be

10

attributed to him individually, *see Gem City Bone & Joint, P.C. v. Meister*, 947 N.W.2d 302, 312 (Neb. 2020) ("Under the principles of corporate law, it is generally held that '[w]here the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction.'" (alteration in original) (Wyoming law) (quoting *Ten Mile Indus. Park v. W. Plains Serv.*, 810 F.2d 1518, 1527 (10th Cir. 1987) (Wyoming law))).[2]

Chastising Adams for what Cuculic sees as a wholesale overreliance on his residency, Cuculic reiterates "the fact that a plaintiff resides in a forum and thus experiences the injury of a tort in that forum is not enough to satisfy the *Calder* effects

---

[2]While relying on *Gem City*, Cuculic aptly notes the Nebraska Supreme Court has long held that the so-called "fiduciary shield doctrine" is irrelevant to analyzing personal jurisdiction. *See Holste v. Burlington N. R.R.*, 592 N.W.2d 894, 909 (1999) ("Under Nebraska law, the focus is on the defendant's actions regardless of the capacity in which those actions were undertaken."). Cuculic briefly contends *Gem City* leads to the conclusion that Adams's admissions that Cuculic's communications were supervisory and work-related "insulate Cuculic from Nebraska's jurisdiction." But he fails to note that *Gem City* turned on the application of Wyoming law. *See Gem City*, 947 N.W.2d at 311. For its part, the Eighth Circuit has said "a corporate officer or agent who has contact with the forum state *only with regard to the performance of corporate duties* does not thereby become subject to jurisdiction in his or her individual capacity." *Ark. Rice Growers Co-op. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986) (emphasis added). More recently, it noted the "Supreme Court has 'reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.'" *Henry*, 950 F.3d at 533 (quoting *Keeton*, 465 U.S. at 781 n.13). In analyzing Cuculic's motion, this Court has followed the course set forth in *Henry*, *Keeton*, and *Calder* and individually assessed Cuculic's contacts with Nebraska to determine whether "he should have reasonably anticipated being haled into court [here]." *Id.* (concluding the defendant acted "both in an individual and a corporate capacity"); *cf. Copperhead Agric. Prods., LLC v. KB Ag Corp., LLC*, No. CIV.18-4127, 2019 WL 4673197, at *16 (D.S.D. Sept. 25, 2019) (recognizing "an exception to the 'fiduciary shield doctrine' for a corporate officer's intentional tortious or fraudulent actions"). The Court has neither judged Cuculic's contacts with Nebraska "according to [his] employer's activities" here nor allowed his employee status to "somehow insulate [him] from jurisdiction." *Calder*, 465 U.S. at 790. Cuculic's suggestion that Adams's admissions wholly insulate him from jurisdiction is unavailing, particularly given the specific allegations in this case.

11

test." *See Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").

As the parties' respective arguments make clear, the unique nature of this case presents some tricky issues. The answers to novel questions about minimum contacts are rarely "written in black and white. The greys are dominant and even among them the shades are innumerable." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 820 (8th Cir. 1994) (quoting *Kulko v. Cal. Super. Ct.*, 436 U.S. 84, 92 (1978)). The digital contacts in this case are no different—half-tone greys dominate.

Of course, Adams has the burden of establishing personal jurisdiction, but the bar is not particularly high at this stage. *See Epps*, 327 F.3d at 647 (requiring "only . . . a prima facie showing of jurisdiction"); *Johnson*, 614 F.3d at 794 (describing the requisite evidentiary showing as "minimal"). And the Court views the evidence and resolves any factual conflicts in his favor. *See Fastpath*, 760 F.3d at 820.

Still, this is a close case. Each party has some hits and misses, yet neither runs up the score. Cuculic is correct that Adams's residency in Nebraska by itself is not enough to support jurisdiction and that Cuculic's contacts must be contacts he himself made with the forum. *See Burger King*, 471 U.S. at 462. The Court also agrees that Adams's errant reliance on evidence of unrelated and extraneous digital communications adds little, if anything, to the requisite analysis.

But all told, Adams has proffered sufficient evidence—viewed in his favor— at this point "to support a conclusion that the exercise of personal jurisdiction over [Cuculic] is proper." *Creative Calling*, 799 F.3d at 979 (stating such an "action should not be dismissed for lack of jurisdiction" at the motion stage). Cuculic emphasizes that Adams unilaterally moved to Nebraska but concedes he tacitly approved the move after Adams made it and allowed him to live and work in Nebraska and operate his team from there for months. *See Walden*, 571 U.S. at 286 (clarifying that "a defendant's contacts

12

with the forum State may be intertwined with his transactions or interactions with the plaintiff," even if a relationship with the plaintiff, "standing alone, is an insufficient basis for jurisdiction"). Cuculic and Adams continued their employment relationship for almost a year-and-a-half, allegedly closing out with a flurry of tortious activity when things went south.

Given totality of the circumstances in this case and Cuculic's alleged role in particular, Cuculic can hardly claim he has been "haled into [Nebraska] solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party.'" *Burger King*, 471 U.S. at 475 (first quoting *Keeton*, 465 U.S. at 774, then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Cuculic focuses on the ephemeral nature of his emails and calls, but Adams alleges far more than that. Adams asserts Cuculic was the "primary participant[] in an alleged wrongdoing intentionally directed at a [Nebraska] resident, and jurisdiction over [him] is proper on that basis." *Calder*, 465 U.S. at 790.

Having carefully considered the uncontroverted facts in the light most favorable to Adams and duly weighed the parties' respective arguments, the Court further finds asserting jurisdiction over Cuculic comports with "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320 (listing factors). Indeed, Cuculic diligently protects his liberty interest and vigorously challenges the sufficiency of his contacts with Nebraska but does not earnestly argue that subjecting him to personal jurisdiction is otherwise unconstitutionally unfair or unjust. *See id.*; *Burger King*, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). Accordingly, Cuculic's Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 16) is denied.

IT IS SO ORDERED.

Dated this 22nd day of August 2024.

                                      BY THE COURT:

                                      Robert F. Rossiter, Jr.
                                      Chief United States District Judge