IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GREGORY P. ADAMS,<br><br>              **Plaintiff,**<br><br>vs.<br><br>BEST WESTERN INTERNATIONAL, INC., and LAWRENCE M. CUCULIC,<br><br>              **Defendants.** | 8:24CV102<br><br>**MEMORANDUM AND ORDER** |

      This matter comes before the Court on two motions filed by the parties. Plaintiff, Gregory Adams, filed a Motion to Disqualify Counsel for Defendants (Filing No. 59), moving the Court for an order disqualifying Jackson Lewis P.C. and Fennemore Craig, P.C. from jointly representing the Defendants, Best Western International, Inc. ("BWI") and Lawrence M. Cuculic ("Cuculic"), on the basis that the dual representation of the defendants creates a conflict of interest jeopardizing the fairness of the proceedings. Defendants vehemently oppose the motion, and in response have filed a Motion for Rule 11 Sanctions (Filing No. 68), seeking monetary sanctions in an amount equal to the attorneys' fees and costs incurred in defending against what they view as a frivolous motion. For the following reasons, this Court will deny Plaintiff's motion to disqualify, and will also deny Defendants' motion for Rule 11 sanctions.

**BACKGROUND**

      Plaintiff initially commenced this action against BWI, BWI's Board of Directors, and Cuculic, alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the ADA Amendment Acts of 2008, the Nebraska Fair Employment Practice Act ("FEPA"), the Family and Medical Leave Act ("FMLA") (29 U.S.C. §2601, et seq.), and Nebraska state law, arising out of events leading to the termination of his employment with BWI in March 2024. (Filing No. 1). Plaintiff subsequently dismissed the BWI Board of Directors as a party, and filed an Amended Complaint against BWI and Cuculic containing similar claims. (Filing No. 11).

      As alleged in the Amended Complaint (Filing No. 11), Plaintiff began working for BWI on November 1, 2013, as Vice President of E-commerce. Between 2013 and 2020, Plaintiff worked at BWI's Global Operations center in Phoenix before moving into a hybrid capacity

between March 2020 and December 5, 2023, when he took FMLA leave. Plaintiff relocated to Nebraska on October 1, 2022, but frequently traveled to Phoenix for board meetings and work-related events. (Filing No. 11 at pp. 3-4).

During his employment, Plaintiff was promoted to Sr. Vice President and Chief Digital Officer. Plaintiff has autism spectrum disorder ("ASD"), and during his employment he participated in company events and employee discussions "about the challenges and successes [he] experienced as a neurodiverse executive for [Best Western]." On December 1, 2021, Plaintiff began reporting to Cuculic, the newly named CEO and President of BWI. Cuculic is a licensed attorney and previously served as BWI's General Counsel. (Filing No. 11 at pp. 3-4).

Plaintiff alleges that, throughout his many years of employment with BWI, he consistently performed at a high level and received excellent performance reviews, including a positive review from Cuculic in December 2022. However, Plaintiff alleges that all changed after BWI's annual convention in September 2023. During the convention, Plaintiff alleges Cuculic made a public joke about Plaintiff's ASD. Plaintiff states BWI dismissed his report that Cuculic's comments were discriminatory "because the audience laughed[.]" (Filing No. 11 at pp. 5-6). Additionally, while at the conference Plaintiff alleges he overheard BWI's Vice-Chairperson, Phil Payne, make a racist comment about a former board member of Asian descent. Plaintiff reported the comment to Cuculic at the convention in accordance with BWI's discrimination policy. (Filing No. 11 at pp. 6-7). Plaintiff maintains Cuculic did not promptly, thoroughly and fairly investigate the report. Plaintiff contends Cuculic's participation in the interview of Payne posed a conflict of interest arising from Cuculic's direct reporting to the Board of Directors. (Filing No. 11 at pp. 7-8).

After the annual conference, Plaintiff alleges he immediately "noticed a shift" in Cuculic's treatment and attitude towards him. Cuculic became hostile and critical, and gave Plaintiff a poor performance review in November 2023. (Filing No. 11 at pp. 11-12). Plaintiff alleges Cuculic's pretextual performance review and other discriminatory and retaliatory actions caused him extreme stress and anxiety, culminating in Plaintiff taking FMLA leave on December 3, 2023, "to focus on his health and well-being." While on FMLA leave, Plaintiff filed charges against BWI with the federal Equal Employment Opportunity Commission and the Nebraska Equal Opportunity Commission, asserting claims for discrimination and retaliation. When Plaintiff returned to work on February 27, 2024, he met with Cuculic and BWI's Vice President of Human Resources.

2

Cuculic then placed Plaintiff on indefinite administrative leave, and terminated his employment a few days later. (Filing No. 11 at pp. 18-27).

Although Plaintiff initiated this lawsuit on March 19, 2024, the parties spent the next several months litigating various pre-discovery issues. On June 20, 2024, Cuculic filed a motion to dismiss for lack of personal jurisdiction, which the Court denied on August 22, 2024. (Filing No. 27). Cuculic then filed a motion to certify the Court's order for immediate appeal and to stay proceedings pending appeal, (Filing No. 32), which the Court denied on October 21, 2024, (Filing No. 39). Cuculic next filed a motion to partially dismiss the claims against him on November 1, 2024, (Filing No. 41), which the Court granted, in part, on January 15, 2025, (Filing No. 56), dismissing Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

While Cuculic's motion for partial dismissal was pending, additional disputes arose between the parties. First, the parties requested a telephone conference with the undersigned magistrate judge regarding Plaintiff's proposed third party subpoena to a former BWI board member, Danny Lafayette, and the defendants' objections to it. (Filing Nos. 53-54, 57-58). During that telephone conference held on January 17, 2025, defense counsel stated he did not represent Lafayette and had not communicated to him about the proposed subpoena. (See Filing No. 58). Plaintiff's counsel found defense counsel's statement that he did not represent Lafayette "alarming" in light of another dispute brewing between the parties. Specifically, Plaintiff's counsel believes defense counsel should be disqualified from representing both defendants because "the shared representation of BWI and Cuculic creates conflicts that directly harm Plaintiff by obstructing discovery, shielding relevant evidence, and compromising the procedural fairness of this case" particularly in light of "Cuculic's dual roles as a named Defendant and BWI's CEO" and his prior tenure as General Counsel. (Filing No. 60 at pp. 3-4).

Plaintiff further believes the defendants' joint representation is improper and prejudicial in light of the circumstances surrounding a settlement demand communicated to defense counsel on December 10, 2024. Plaintiff's counsel sent defense counsel a letter containing "a settlement proposal intended exclusively to resolve the ongoing litigation between my client, [Plaintiff], and your client, Best Western International, Inc. ("BWI"). This proposal is designated solely for presentation to the BWI Board of Directors and should not be shared with or addressed to Mr. Lawrence M. Cuculic." The total settlement demand exceeded $10.7 million and set a deadline

3


for acceptance of December 30, 2024. (Filing No. 67 at p. 5). The settlement offer requested "written confirmation that this settlement offer, along with my client's correspondence, has been provided directly to the respective Board members for their review and consideration no later than the close of business on December 12, 2024." (Filing No. 67 at p. 6).

Defense counsel did not respond to the settlement letter. On December 17, 2024, Plaintiff's counsel emailed defense counsel to "follow[] up on my previous correspondence regarding the settlement offer on behalf of [Plaintiff], specifically my request for confirmation that the offer and my client's correspondence have been delivered directly to the Board of Directors of BWI." (Filing No. 67 at p. 8). Defense counsel also did not respond to that email. On December 31, 2024, Plaintiff's counsel noted the deadline for the settlement offer had expired and defense counsel had not yet provided "confirmation that the letters were delivered to their intended recipients on the Board of Directors[.]" Plaintiff's counsel then continued, "To ensure compliance with Nebraska's Rules of Professional Conduct, particularly Rule 1.4 (requiring attorneys to communicate effectively with their clients), I ask that you confirm: 1. Whether each Board member has received their respective settlement offer letter. 2. The date of receipt for each individual Board member." Plaintiff's counsel continued, "[I]f we do not receive confirmation by the close of business on January 2, 2025, we will need to explore procedural options to address this issue." (Filing No. 67 at pp. 7-8).

On January 2, 2025, defense counsel responded to Plaintiff's counsel that the "final $10M+ demand expired by its own terms on December 30, 2024. Not accepting the demand by the deadline was our response." Defense counsel further replied he has "no obligation to share with you what I discuss with my clients, nor would I ever do that under any circumstance." (Filing No. 67 at p. 7).

On January 22, 2025, Plaintiff filed the instant Motion to Disqualify Counsel for Defendants. (Filing No. 59). Plaintiff maintains he "has a legally protectable interest in ensuring a fair litigation process untainted by conflicts of interest," and the defendants' dual representation "impairs the transparency and procedural fairness of the proceedings, directly prejudicing Plaintiff by obstructing discovery and distorting the proper presentation of defenses." (Filing No. 60 at p. 7). Plaintiff asserts the defendants have an irreconcilable conflict because they have "inherently adverse positions regarding liability and defenses"; their shared representation "risks improper shielding of evidence under attorney-client privilege"; and defense counsel is either unwilling or

4

unable "to provide independent representation to BWI's board members," citing defense counsel's "inability of shared counsel to confirm the delivery of Plaintiff's settlement offers to the Board[.]" (Filing No. 60 at pp. 7-8).

The undersigned magistrate judge held a telephonic hearing on Plaintiff's motion to disqualify on February 4, 2025. During the hearing, Plaintiff's counsel represented the December 2024 settlement offer was not to resolve "50%" of the case, but was for "full resolution of the case," and Plaintiff's counsel "only" wanted a "yes or no" from defense counsel that the settlement demand was communicated to the Board. (Filing No. 65 at 17:10-22:12). Defense counsel reiterated the lack of response to Plaintiff's "ludicrous" settlement offer was their response, and defense counsel is not required under any rule, ethical or otherwise, to confirm with Plaintiff's counsel that he complied with his ethical duties by communicating the settlement demand to his clients. Defense counsel also stated his clients have informed consent and agreed to the dual representation. (Filing No. 65 at 26:10-28:21). After review of the motion and hearing arguments from counsel, the undersigned magistrate judge conveyed to the parties that the motion to disqualify would likely be denied, and provided Plaintiff until February 7, 2025, to decide whether to withdraw it. Defense counsel stated an intention to file a motion for Rule 11 sanctions if the motion was not withdrawn. (Filing Nos. 64-65).

Plaintiff decided not to withdraw his motion to disqualify, and Defendants in turn filed a Motion for Rule 11 Sanctions. (Filing No. 68). Defendants contend Plaintiff's motion to disqualify is so frivolous that the Court should impose monetary sanctions in an amount equal to the attorneys' fees and costs Defendants have incurred opposing Plaintiff's motion and in filing the motion for sanctions. (Filing No. 68 at p. 10).

## ANALYSIS

### I. Motion to Disqualify

Plaintiff has moved to disqualify Defendants' counsel due to the "inherent and irreconcilable conflicts of interest stemming from Defense Counsel's concurrent representation of BWI and its CEO, Cuculic, which undermines the procedural fairness and transparency necessary for impartial adjudication." (Filing No. 60 at p. 1). A party moving for disqualification of counsel must first "demonstrate that he has standing to bring a motion to disqualify based on a perceived conflict of interest" between opposing parties. See *Nebraska Data Centers, LLC v. Khayet*, No.

5

8:17CV369, 2018 WL 2050567, at *2 (D. Neb. Apr. 24, 2018); accord *George v. George*, No. 8:23CV56, 2024 WL 4826061, at *2 (D. Neb. Nov. 19, 2024). "Typically, a party shows standing by demonstrating he will be prejudiced by the conflicted representation, but a party may also show standing when there is a 'perceived threat to the fairness of the proceeding' because the conflicted parties are not aware of or are unable to appreciate the seriousness and injustice of the conflict." *Id.* (citing *Hawkes v. Lewis*, 586 N.W.2d 430, 436 (Neb. 1998), *overruled on other grounds*, *Heckman v. Marchio*, 894 N.W.2d 296 (Neb. 2017)).

"A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Phila. Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (citations omitted). "Because of the potential for abuse by opposing counsel, 'disqualification motions should be subjected to particularly strict scrutiny.'" *Id.* (quoting *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996)); see also *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir.2007) ("We review the grant of a motion to disqualify a lawyer as trial counsel for an abuse of discretion, but because the potential for abuse by opposing counsel is high, the Court subjects such motions to particularly strict scrutiny."). "The moving party bears the burden of proving that disqualification is required." *Awnings v. Fullerton*, 912 F.3d 1089, 1096 (8th Cir. 2019) (citing *A.J. by L.B. v. Kierst*, 56 F.3d 849, 859 (8th Cir. 1995)).

When reviewing a motion for disqualification of an attorney, the court applies "the same rules governing the professional conduct of attorneys that the district court has adopted." *Awnings*, 912 F.3d at 1095 (quoting *Harker*, 82 F.3d at 808). This district recently amended its local rules and now requires attorneys admitted to practice in this court to "comply with the Nebraska Rules of Professional Conduct and this court's local rules." NECivR 1.7(b); *cf. Awnings*, 912 F.3d at 1096 (discussing this district's prior version of NEGenR. 1.7(b) that "decline[d]s to adopt other codes of professional responsibility or ethics."). This district's local rules now provide, "An attorney who is admitted to practice in this court must comply with the Nebraska Rules of Professional Conduct, which are adopted as the rules of this court, and the local rules of this district, including the court's local rules that address attorney conduct and discipline." NEGenR 1.8(a).

As an initial matter, the Court is unpersuaded that Plaintiff, who is not a current or former client and is only an opposing litigant, has established standing to disqualify defense counsel.

6

Plaintiff asserts he has standing based on the perceived conflict of interest between the two defendants. (Filing No. 60 at p. 6). Plaintiff contends he "has a legally protectable interest in ensuring a fair litigation process untainted by conflicts of interest," and argues the "dual representation of Defendants impairs the transparency and procedural fairness of the proceedings, directly prejudicing Plaintiff by obstructing discovery and distorting the proper presentation of defenses." (Filing No. 60 at p. 7). Plaintiff argues BWI's Bylaws "highlight the potential for conflict" and states, "[e]ven if informed consent were obtained, the inherent structural conflicts would continue to compromise the ability of Defense Counsel to provide unbiased representation." (Filing No. 60 at p. 12). Plaintiff claims his standing "arises from his equitable interest in an unbiased adjudication of his claims and his legal right to challenge any conduct that undermines the integrity of these proceedings." *Id.*

Plaintiff's claim of standing arises out of what he views as a serious, irreconcilable conflict between Cuculic and BWI that they are either unaware of or unable to appreciate. However, Plaintiff's own arguments recognize this is an asserted "potential for conflict" simply arising out of Cuculic's position as CEO and former general counsel of BWI. But, aside from the circumstances surrounding Plaintiff's settlement offer, Plaintiff's arguments are premised largely upon hypothetical concerns regarding "privilege misuse," "obstructing discovery," and "shielding relevant evidence"—none of which has yet to occur. (Filing No. 60 at pp. 1-2, 7).

As proof of conflict and prejudice to Plaintiff, Plaintiff directs the Court's attention to the circumstances surrounding Plaintiff's December 2024 settlement demand, which by its terms was not to be communicated to Defendant Cuculic and expired on a date certain.[1] Defense counsel did not respond to the demand, and in response to follow-up emails from Plaintiff's counsel, defense counsel stated, "Not accepting the demand by the deadline was our response." Neb. R. Prof. Conduct § 3-501.4(a)(1) requires an attorney to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, . . . is required[.]" This requires a lawyer to "promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take." Neb. R. Prof. Conduct § 3-501.4 [2]. "For example, a lawyer who receives from opposing counsel

---

[1] Defendants accurately point out that Plaintiff's settlement demand "explicitly" stated it should not be shared with Cuculic, but during the telephonic hearing on this matter, Plaintiff's counsel represented that the settlement offer was for "full resolution of the case," thereby putting defense counsel in an untenable position of being asked not to communicate a settlement demand to one of his clients to whom the offer applied. (Filing No. 66 at pp. 7-8).

7

an offer of settlement in a civil controversy . . . must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer." Neb. R. Prof. Conduct § 3-501.4 [2]. "[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter." Neb. R. Prof. Conduct § 3-501.2.

There is no doubt an attorney has an ethical obligation to communicate settlement demands to his clients within the scope of the agreed representation. However, Plaintiff has not directed the Court to any authority to suggest opposing counsel also has an ethical duty to disclose to opposing counsel that he is complying with his ethical duties to communicate with his clients within the scope of their agreed representation. See, e.g., *In re Trevino*, 633 B.R. 485, 513 (Bankr. S.D. Tex. 2021) ("Defendants do not point this Court to any legal obligation owed by Applicants to Defendants to apprise Plaintiffs of any settlement offers. Unquestionably, Applicants had an ethical obligation to Plaintiffs to present them with any such offers, but this Court fails to see how Applicants' obligation to their clients translates into an obligation owed to Defendants."). Plaintiff's $10.7+ million settlement demand was rejected. Defense counsel does not ethically owe anything further to Plaintiff.

The Eighth Circuit has expressed "serious doubts" that district courts have authority to disqualify counsel "for reasons unrelated to professional conduct" and absent a finding of ethical violations. *O'Connor v. Jones*, 946 F.2d 1395, 1399 n.4 (8th Cir. 1991) (citing *Jensen v. Satran*, 633 F.Supp. 1187, 1188 (D.N.D.)) ("This court does not have the authority or inclination to supervise the defendants in their respective choices of counsel."); see also, *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998) ("We have difficulty seeing how [the plaintiff] has standing to complain about a possible conflict of interest arising out of common representation of defendants in different civil actions, having nothing to do with her own representation" because "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."); *Nicholas v. Grapetree Shores, Inc.*, 2013 WL 1196960, at *7 (D.V.I. Mar. 22, 2013) (stating that when a nonclient party "seeks disqualification of opposing counsel [based on] an alleged conflict of interest between opposing counsel and his client, that

party lacks standing unless he can show 'an ethical breach that so infects the litigation . . . that it impacts the moving party's interest in a just and lawful determination of h[is] claims.'").

Here, defense counsel represented to the Court that he has received informed consent by both defendants to move forward with the dual representation. See Neb. R. Prof. Conduct § 3-501.13(g) ("A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders."). It is not Plaintiff's duty to police defense counsel's ethical obligations to his clients in this case. Nor is there any evidence to suggest defense counsel has or would violate his ethical obligations if a conflict does arise. Upon review, the Court finds that none of the reasons delineated by Plaintiff warrant disqualifying Defendants' chosen counsel and will therefore deny the motion to disqualify.

## II.     Motion for Sanctions

Defendants have filed a motion for sanctions under Fed. R. Civ. P. 11(c)(2), asserting Plaintiff' motion to disqualify is frivolous, was made for an improper purpose, is not supported by existing law, and lacks evidentiary support. (Filing No. 68 at p. 9).

Rule 11 requires all parties who file pleadings, motions and other papers in federal court to ensure "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the claims and arguments presented "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," that the "factual contentions have evidentiary support," that the "denials of factual contentions are warranted on the evidence," and that the filing was not made "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b).

Rule 11 is to deter baseless filings in district court. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct." *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994). "[T]he standard under Rule 11 is whether the attorney's conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Clark v. United Parcel Ser.,*

9

*Inc.*, 460 F.3d 1004, 1009 (8th Cir. 2006) (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)). "Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis of the claim before filing." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) (quoting *Miller v. Bittner*, 985 F.2d 935, 938 (8th Cir. 1993). "To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the […] allegations, as well as a legal basis." *Coonts*, 316 F.3d at 753 (quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991)). Ultimately, court's job is to determine "whether a reasonable and competent attorney would believe in the merit of an argument." *Id.*

The Court finds Rule 11 sanctions are not warranted against Plaintiff. Plaintiff's motion to disqualify was not made for an improper purpose or with intentional or reckless disregard of the attorney's duties to the court. Although the Court ultimately found the motion to disqualify should be denied, that is not to say Plaintiff's concerns about the potential for a conflict between Cuculic and BWI are totally unfounded given the facts of this case. The Court also finds that, contrary to Defendants' assertions, Plaintiff did not file the motion to disqualify in retaliation for Defendants' refusal to disclose privileged settlement communications or as a result of the Court dismissing two of the claims against Cuculic. (Filing No. 68 at pp. 3-5). Rather, given Plaintiff's experiences with Cuculic as alleged in his Amended Complaint, Plaintiff could reasonably view defense counsel's failure to respond to the settlement demand as evidence of a conflict of interest materially affecting Plaintiff's rights in this litigation. Moreover, although Defendants assert the Court's dismissal of two claims against Cuculic was a "triggering" event, the affidavit of Plaintiff in support of his motion to disqualify was executed before a notary on January 13, 2025, (Filing No. 60 at p. 15), and the Court's Memorandum and Order was filed two days later on January 15, 2025, (Filing No. 56). So, although Plaintiff's motion was filed on January 22, 2025, the supporting documents show the motion was being drafted prior to the Court's Memorandum and Order dismissing the claims. In sum, after the Court's review, it finds Plaintiff's arguments in the motion to disqualify were not frivolous or so baseless that sanctions should be imposed. Accordingly,

**IT IS ORDERED:**
1. Plaintiff's Motion to Disqualify Counsel for Defendants (Filing No. 59) is denied.
2. Defendants' Motion for Rule 11 Sanctions (Filing No. 68) is denied.

Dated this 9th day of May, 2025.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge